Clara **LITTLES**

v.

Arnold R. **LIEBERMAN.**

**Misc. No. 88–0083.**

United States District Court, E.D. Pennsylvania.

Sept. 7, 1988.

Mary Jeffery, Community Legal Services, Inc., Philadelphia, Pa., for plaintiff.

Anne Matchulet, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

VAN ANTWERPEN, District Judge.

This is a non-core bankruptcy proceeding involving tort claims. I have before me RECOMMENDED OPINION CONTAINING PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW submitted to me by Order dated February 12, 1988 of United States Bankruptcy Judge David A. Scholl in Bankruptcy No. 87–00092S, Adversary No. 87–02394S, 90 B.R. 669. This matter was submitted to me pursuant to 28 U.S.C. § 157(c)(1) for entry of a final order. I have also before me DEFENDANT ARNOLD R. LIEBERMAN'S OBJECTIONS TO PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW filed March 4, 1988. For reasons stated in this opinion, I make the following findings of fact.

## FINDINGS OF FACT

1. In September, 1986, Clara Littles received a letter dated September 17, 1986, on the letter head of the defendant, reading as follows:

LAW OFFICES
ARNOLD R. LIEBERMAN
230 SOUTH BROAD STREET • SUITE 1426
PHILADELPHIA, PENNSYLVANIA 19102

Arnold R. Lieberman
Andrew N. Schwartz

(215) 735-4634
(215) 735-4675

CLARA LITTLES
2156 N. HUTCHINSON St.
PHILA; PA. 19133

PLAINTIFF: FLEET CONS.
DISC. CO.
ACCOUNT NO.: #26549752
AMOUNT DUE: $207.50

Dear Sir and/or Madam:

The above matter has been referred to me for collection. I am obligated to demand immediate payment of the full amount of the plaintiff's damages and costs as stated above.

Unless I receive payment in full within one week from the date of this letter, I will be compelled to proceed with suit against you. This can result in the listing of your property, either Real Estate or Personalty, for forced Sale by the Sheriff, after appropriate legal proceedings have been concluded.

Such action will result in additonal expense to you, for the Court fees and Sheriff's costs.

Full payment should be in my hands within one week. You may telephone me for additonal information.

Very truly yours,

Arnold R. Lieberman, Esq.

ARL:dl
Date: 9-11-86
cc Manager: RON PRICE
Phone No.: 572-1960

---

2. At that time, Littles was delinquent in payments on a loan from Fleet Consumer Discount Company ("Fleet") secured by a mortgage on her residence.

3. On September 24, 1986, Fleet's branch manager, Ronald Price, sent an even stronger letter to Littles, stating, *inter alia*, that it was suggested that she remove all of her personal property from the premises because she would be evicted in an impending foreclosure sale of her home.

4. Littles is a 57–year old widow who attended school only through tenth grade in North Carolina and whose husband had recently expired in November, 1985. Littles testified that she believed that, as a result of these letters, Fleet was suing her and that she would lose her home. She testified that she "was very upset", cried, couldn't eat, couldn't sleep, lost eleven

pounds in the next two or three months, and tried unsuccessfully to obtain financial assistance from her three children and a friend.

5. The defendant testified that he had been a practicing lawyer for twenty-seven (27) years, having represented Fleet for ten (10) years. He further stated that he had represented several other loan companies in collection activities, wherein he had utilized the letter quoted in paragraph one for the past ten or twelve years. Finally, he testified that the letter had been prepared after consultation with attorneys from the office of Littles' counsel.

6. The defendant also testified that the signature on the letter was not his, and that he had never authorized the dispatch of this letter to Littles.

7. The defendant and Ronald Price both testified that, on one occasion, due to his own secretarial problems, the defendant had come to the Fleet office with several copies of his letter to be sent to particular Fleet customers, not including Littles. Mr. Price opined that a Fleet employee, without authority to do so, had made an extra copy of the letter, signed the defendant's name to it, and sent it to Littles.

8. Mr. Price stated that Fleet had utilized the letter in certain cases in the past with the defendant's authority, but that Fleet had "overstepped its bounds" in sending the letter to Littles without the defendant's permission.

9. The signature on the September 17, 1986 letter to plaintiff Clara Littles was not the defendant's, and he never authorized the dispatch of the letter to Clara Littles. A Fleet employee made an extra copy of a letter intended for other purposes, signed the defendant's name to it and sent it to Clara Littles.

10. After the institution of this adversary proceeding, plaintiff Littles instituted a separate adversary proceeding, *Clara Littles v. Fleet Consumer Discount Company*, Adv. No. 87–0420S. This action made a claim based on the letter of September 17, 1986, in issue here. Although Mr. Lieberman's form was used for that letter,

he was not joined nor were the actions consolidated.

11. On July 16, 1987, Littles and Fleet entered into a Settlement Agreement, thereafter approved by the United States Bankruptcy Court, in which Littles released Fleet from all claims set forth in Adv. No. 87–0420S. Mr. Lieberman was not a party to that settlement or release, nor was he given opportunity to be one.

## DISCUSSION

This action is based on plaintiff's claim that she received a debt collection letter dated September 17, 1986, bearing defendant's name. She alleges this letter violated the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* ("FDCPA") and Pennsylvania state Debt Collection Trade Practices Regulations, 37 PA CODE § 303.1 *et seq.*, as enforced through the Pennsylvania state Unfair Trade Practices and Consumer Protection Law, Pa.Stat. Ann. tit. 73, § 201–1, *et seq.* (collectively "DCTPR"), because the letter threatened suit but was not in fact signed by a lawyer with the actual intention of bringing suit. Defendant is a lawyer and the collection letter which purported to have been sent out by him was actually mailed by employees of a loan company (Fleet) he represented. The bankruptcy judge recommended judgment in favor of defendant under both federal and state law. Defendant nevertheless objected to certain proposed findings of fact and conclusions of law. Plaintiff objected to one proposed conclusion of law. For the reasons given below, I am entering judgment in favor of defendant and against plaintiff on the federal claim, and am dismissing the state claim without prejudice.

Pursuant to 28 U.S.C. § 157(c)(1) (West Supp.1988) and Bankr. Rule 9033(d), 11 U.S.C.A. (West Supp.1988), I must review *de novo* those matters to which any party has timely and specifically objected. *De novo* review requires me to make an independent judgment of the issues. *Matter of Campbell*, 812 F.2d 1465, 1467 (4th Cir. 1987); *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1210 (7th Cir.1984). In doing so, I

have examined the entire record in this matter. Witness credibility is not sufficiently at issue to warrant receipt of further evidence.

Following is my disposition of the matters to which objection has been taken. I shall treat the objections one by one.

The bankruptcy judge's Proposed Finding of Fact No. 5 states:

"5. The Defendant testified that he had been a practicing lawyer for twenty-seven (27) years, having represented Fleet for ten (10) years. He further stated that he had represented several other loan companies in collection activities, wherein he had utilized the letter quoted in paragraph one for the past ten or twelve years. Finally, he testified that the letter had been prepared after consultation with attorneys from the office of Littles' counsel."

Defendant objected to Proposed Finding of Fact No. 5 on the ground that it draws unwarranted inferences from the testimony. I disagree with defendant. The proposed finding is supported by the record and I will let it stand.

The bankruptcy judge's Proposed Finding of Fact No. 9 states:

"9. The foregoing testimony of the Defendant and Mr. Price was not established to be other than factual. Therefore, though with some misgivings, it is credited by the court."

Defendant objected to the term "some misgivings". After a review of the record, I substitute the following Finding of Fact No. 9:

9. The signature on the September 17, 1986 letter to plaintiff Clara Littles was not the defendant's, and he never authorized the dispatch of the letter to Clara Littles. A Fleet employee made an extra copy of a form provided for other purposes, signed the defendant's name to it and sent it to Clara Littles.

The bankruptcy judge's Proposed Findings of Fact Nos. 10 and 11 state:

"10. After the institution of this adversary proceeding, Littles instituted a separate adversary proceeding, at Adv. No. 87–0420S, against Fleet, which did not include the Defendant as a party, apparently based, *inter alia*, on illegal debt collection practices, including the dispatch of the letter of September 24, 1986, but not including the dispatch of the letter of September 17, 1986, in issue here."

"11. On July 16, 1987, Littles and Fleet entered into a Settlement Agreement of Adv. No. 87–0420S, thereafter approved by this court, in which Littles released Fleet from liability for all claims set forth in that proceeding. The Agreement made no mention of either the instant proceeding or the Defendant."

Defendant objects to Proposed Findings of Fact Nos. 10 and 11 because they are based on the assumption that the action entitled *Clara Littles v. Fleet Consumer Discount Co.*, Adversary No. 87–0420S, did not include a claim based on the September 17, 1986 letter. Defendant is correct. Paragraphs 15, 16 and 17 of that complaint do state a claim based on the September 17, 1986 letter. Based on that fact and my Finding of Fact No. 9, I adopt the following Findings of Fact Nos. 10 and 11:

10. After the institution of this adversary proceeding, plaintiff Littles instituted a separate adversary proceeding, *Clara Littles v. Fleet Consumer Discount Company*, Adv. No. 87–0420S. This action made a claim based on the letter of September 17, 1986, in issue here. Although Mr. Lieberman's form was used for that letter, he was not joined nor were the actions consolidated.

11. On July 16, 1987, Littles and Fleet entered into a Settlement Agreement, thereafter approved by the United States Bankruptcy Court, in which Littles released Fleet from all claims set forth in Adv. No. 87–0420S. Mr. Lieberman was not a party to that settlement or release, nor was he given opportunity to be one.

The bankruptcy judge's Proposed Conclusion of Law No. 1 states:

"1. The instant proceeding is a non-core, related matter. Therefore, we properly heard the matter, but must submit proposed findings of fact and conclu-

sions of law to the district court rather than determining it ourselves. *See* 28 U.S.C. § 157(c)(1)."

■ Defendant objects to Proposed Conclusion of Law No. 1 on the ground that the instant case is neither core or related. I adopt the reasoning of the United States Bankruptcy Judge in finding that this is not a core proceeding and that it is a related proceeding. In addition to his reasoning concerning why this is a related proceeding, I offer the following.

In enacting the Bankruptcy Reform Act of 1978,[1] Congress made a fundamental change in its approach to defining the bankruptcy estate. "The scope of 11 U.S.C. § 541(a)(1) is broad. It includes all kinds of property, including tangible or intangible property, causes of action ... and all other forms of property currently specified in section 70a of the Bankruptcy Act." *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205, 103 S.Ct. 2309, 2313 n. 9, 76 L.Ed.2d 515 n. 9 (1983). As stated in *Tignor v. Parkinson,* 729 F.2d 977, 980–81 (4th Cir.1984):

> "The Bankruptcy Reform Act which repealed the old Bankruptcy Act is a significant change in the law applicable to the property of a bankrupt estate. Under the old Act only non-exempt property was included as a part of the bankrupt estate under *Lockwood v. Exchange Bank,* 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061 (1903). Under the Reform Act, however, all property of the debtor is included in the bankrupt estate, including exempt property. 'After the property comes into the estate, then the debtor is permitted to exempt it under proposed 11 U.S.C. § 522, and the court will have jurisdiction to determine what property may be exempted and what remains as property of the estate.' Legislative History, 1978 U.S.Code Cong. & Ad.News at 5787, 5868, 6324 [hereinafter Leg. Hist.]. The Reform Act thus overrules *Lockwood,* Leg.Hist. at 5868, 6324, and we have previously so acknowledged in *Shirkey v. Leake,* 715 F.2d 859, 863 (4th Cir.1983). Under 11 U.S.C. § 541(a), a

bankrupt estate includes, with minor exceptions not relevant here, 'all legal or equitable interests of the debtor in property as of the commencement of the case.' 'This includes all exempt property.' *Shirkey v. Leake,* 715 F.2d at 863. The legislative history of this statute is explicit in that: 'The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action ... and all other forms of property currently specified in section 70(a) of the Bankruptcy Act....' Leg.Hist. at 5868, 6323. It 'includes as property of the estate all property of the debtor, even that needed for a fresh start.' *Id.*"

The *Tignor* reasoning was adopted by the Ninth Circuit in *Sierra Switchboard Co. v. Westinghouse Elec. Corp.,* 789 F.2d 705 (9th Cir.1986). The test articulated in the Third Circuit is found in *In Re Bobroff,* 766 F.2d 797, 802 (3d Cir.1985) and *Pacor v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984) as follows:

> "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy....* An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."

Under these tests, the cause of action of Littles in this matter, arising as it did before the filing, is clearly a part of the estate and therefore a related matter within the meaning of 28 U.S.C. § 157(c)(1).

Therefore, I adopt Proposed Conclusion of Law No. 1 as my Conclusion of Law No. 1.

The bankruptcy judge's Proposed Conclusion of Law No. 2 states:

> "2. The Defendant is a 'debt collector,' subject to potential liability under the

---

1. Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 401, 92 Stat. 2549, 2682.

FDCPA and DCPTR [*sic*] for dispatch of the letter in issue."

Defendant objects to Proposed Conclusion of Law No. 2 on the ground that there is no proof that defendant regularly engaged in the practice of debt collection or that he sent the letter as part of his practice, and on the ground that the Proposed Conclusion of Law No. 2 is moot. I agree that, in light of my Findings of Fact Nos. 10 and 11 and my Conclusion of Law No. 3, no judgment can be rendered against defendant. However, defendant has raised the question of the applicability of FDCPA and DCTPR to his practice. Resolution of that question is necessary under 28 U.S.C. § 157(c)(1) even though its application is moot. Therefore, I will deal with that issue. I will begin by quoting from page 78 of the transcript of the hearing in this matter on September 8, 1987, before the Honorable David A. Scholl, United States Bankruptcy Judge. Curtis P. Cheyney, III, Esquire, counsel for defendant, is cross-examining defendant:

"BY MR. CHEYNEY:

Q. Okay. Let's first, if I may, Mr. Lieberman, talk about your practice in September of 1986. Could you describe your practice of law in September of 1986?

A. Okay. I'm in the general practice of law. I do every type of law work except criminal work.

Q. In that connection in about that period of time, did you represent both debtors and creditors in connection with loan transactions?

A. Yes.

Q. Did you regularly conduct business on behalf of creditors at that period of time? Was that a principal part of your practice?

A. It's a part of it.

Q. Was it a principal part in September of 1986?

A. Yes.

Q. Did your practice for those creditors include and was it principally the collection of debts?

A. Yes.

Q. But you also indicated that you represented creditors—debtors as well as creditors at that period of time?

A. Yes, I do."

It appears that the fundamental issues in this case are the scope of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (FDCPA) and the scope of the Pennsylvania state Debt Collection Trade Practices Regulations, 37 PA CODE § 303.1 *et seq.*, as enforced through the Pennsylvania state Unfair Trade Practices and Consumer Protection Law, Pa.Stat. Ann. tit. 73, § 201–1 *et seq.* (DCTPR). The question is whether FDCPA and DCTPR govern an attorney, such as the defendant, with a general practice which includes a possibly minor but regular practice in debt collection. Debt collection is an honorable and necessary part of legal practice. The overriding issue in this case is whether that practice is subject to state and federal statutory regulation. For the reasons given below, I believe that it is subject to federal regulation, but will defer to the Courts of the Commonwealth of Pennsylvania the question of state regulation.

I will begin by discussing the application of FDCPA to attorneys. The definition of "debt collector" in FDCPA is found at 15 U.S.C. § 1692a(6) as follows:

"(6) The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . . ."

Prior to an Amendment contained in Pub. L. 99–361, and effective on July 9, 1986, attorneys were expressly excepted from this definition by the terms of former § 1692a(6)(F). *See* R. Hobbs, *Attorneys Must Now Comply with Fair Debt Collection Law,* X PA. J.L.–RPTR., No. 46, pg. 3 (Nov. 21, 1987); and M. Sweig, *Guidelines for Consumer Debt Collection by Attorneys Under the 1986 Amendment to the Fair Debt Collection Practices Act,* 21 NEW ENGLAND L. REV. 697, 698 (1987).

Addressing the "debt collector" definition in his article, Mr. Hobbs states, *supra,* at 3–4, as follows:

"There is no question that FDCPA applicability is not limited just to attorneys who make debt collection the focus of their practices. The definition of 'debt collector' includes any attorney 'who regularly collects or attempts to collect, directly or indirectly [consumer] debts owed or due or asserted to be owed or due another.' The key to this definition is the concept of engaging in collection activities 'regularly'.

Both the legislative history of this amendment and the case law regarding similar provisions in the Federal Consumer Credit Protection Act demonstrates that any attorney who engages in collection activities more than a handful of times per year must comply with the FDCPA. Both sides in the floor debate conceded that the amendment would make the act apply not only to those lawyers who have collection practices but also to those 'who collect on an occasional basis' and 'the small law firm which collects debts incidentally to the general practice of law.' "

In his article, Mr. Sweig quotes directly from the most cogent legislative history of the FDCPA, Senate Report 95–382, 95th Cong., 1st Sess. 3 (1977), U.S.Code Cong. & Admin.News 1977, pp. 1695, 1697–98, in concluding as follows, at 21 NEW ENGLAND L.REV. at 699:

"Congress has not defined 'regularly', but the legislative history indicates that attorneys must interpret this term broadly:

'[t]he requirement that debt collection be done "regularly" would exclude a person who collects a debt for another in an isolated instance, but would include those who collect [debts] for others in the regular course of business.'

Thus, any law firm collecting debts for its clients on more than an 'isolated' basis (which theoretically could mean *once* ) probably falls within the language of the statute."

■ Accordingly, I find that FDCPA does apply to a lawyer, such as defendant, with a general practice including a minor but regular practice in debt collection.

I now turn to the Pennsylvania regulations. The Debt Collection Trade Practices Regulations, 37 PA CODE § 303.2 (DCTPR), were promulgated by the Bureau of Consumer Protection as the delegatee of the Attorney General pursuant to § 201–3.1 of the Unfair Trade Practices and Consumer Protection Law, 73 Pa. S.A. § 201–1 *et seq.* These regulations have been held to be duly promulgated in *Pennsylvania Retailers' Association, Reliable, Inc. v. Lazin,* 57 Pa. Commonwealth 232, 426 A.2d 712 (1981).

The Unfair Trade Practices and Consumer Protection Law regulates "trade and commerce", however, these terms, as defined in 73 Pa. S.A. § 201–2(3), do not expressly mention attorneys or the practice of the law. The definition of "debt collector" in the regulations is found at 37 PA CODE § 303.2, as follows:

. "*Debt collector*—A person not a creditor conducting business within this Commonwealth, acting on behalf of a creditor, engaging or aiding directly or indirectly in collecting a debt owed or alleged to be owed a creditor or assignee of a creditor.

(i) The term includes:

(A) A person while attempting to collect a debt on behalf of a creditor, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for creditors to whom it is so related or affiliated and if the principal business of the person is not the collection of debts;

(B) A person while serving or attempting to serve legal process on another person in connection with the judicial enforcement of a debt.

(ii) The term includes:

(A) A creditor who, in the process of collecting his own debt, uses a name other than his own which would indicate that a third person is collecting or attempting to collect the debt.

(B) A person who sells or offers to sell forms represented to be a collection system, device or scheme which is intended or designed to collect debts."

The bankruptcy judge based his recommended conclusion regarding DCTPR upon the legal assumption that this definition includes lawyers. Although there is no express reference to lawyers, this definition could be construed as being broad enough to include a lawyer, such as defendant, with a general practice including a minor but regular practice in debt collection. However, the matter does not end with this definition. For one thing, there are numerous express references in other portions of the regulations to attorneys such as the prohibition in § 303.3(5) against debt collectors misrepresenting that they are "attorneys". Even more fundamentally, when considering the regulation of lawyers under Pennsylvania law, we must consider the Pennsylvania Constitution, Article V, Sec. 10(c), which provides in relevant part:

" 'The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts ... and for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of the Judicial Branch.... All laws shall be suspended to the extent that they are inconsistent with the rules prescribed under these provisions.'

The Supreme Court has declared the meaning of Article V, Section 10(c) in its Rule of Disciplinary Enforcement No. 103:

'The Supreme Court declares that it has inherent and exclusive power to supervise the conduct of attorneys who are its officers (which power is reasserted in Section 10(c) of Article V of the Constitution of Pennsylvania) and in furtherance thereof promulgates these rules which shall supersede all other court rules and statutes pertaining to disciplinary enforcement heretofore promulgated.' "

These provisions have been considered by the Pennsylvania Supreme Court on a number of occasions. In *Wajert v. State Ethics Commission*, 491 Pa. 255, 420 A.2d 439 (1980), the court held inapplicable to judges, on Pennsylvania constitutional grounds, Section 3(e) of the State Ethics Act, 65 P.S. § 403(e), which precludes public officials and public employees from representing clients before the government body with which they had been associated for a one year period following departure from government service. In *Public Utility Commission Bar Association v. Thornburgh*, 498 Pa. 589, 450 A.2d 613 (1982), the court affirmed, without opinion, a similar holding of the Pennsylvania Commonwealth Court, 62 Pa.Commonwealth Ct. 88, 434 A.2d 1327 (1981), regarding attorneys formerly associated with the Public Utility Commission. In another case (really a *sua sponte* opinion), *In Re 42 Pa.C.S. Sec. 1703*, 482 Pa. 522, 394 A.2d 444 (1978), the court found unconstitutional the effort of the legislature to subject the rulemaking proceedings of the Supreme Court to the Open Meeting Law, 65 Pa.S.A. § 261 *et seq.* In their most recent case on this subject, *Eileen Manus and Felix Thau v. Commonwealth of Pennsylvania, State Ethics Commission*, —— Pa. ——, 544 A.2d 1324 (1988), *rev'g* 100 Pa.Commonwealth Ct. 494, 515 A.2d 83 (1986), the court held that Section 4 of the State Ethics Act, 65 P.S. § 404, requiring financial disclosure, does apply to attorneys employed by the Commonwealth. In so holding, the Court, at ——, 544 A.2d 1324 states:

"Thus, what is contemplated by the exclusivity provision contained in Pa. R.D.E. 103 [Pennsylvania Rule of Disciplinary Enforcement 103] is that this court is the only governmental body entitled to regulate and discipline the professional class of attorneys. No other component of our state government may impose duties applicable to every attorney admitted to practice in the Commonwealth, nor may another Commonwealth entity admit to practice or discipline an attorney. These prerogatives are within this Court's exclusive jurisdiction. However, notwithstanding our substantial authority in this

area, it is ludicrous to suggest that employers are constitutionally precluded from imposing ethical and professional requirements on their employees, some or all of whom may be attorneys. This is equally true where the employer is the Commonwealth or one of its subdivisions."

Summarized, the court makes two key holdings; first, that the Commonwealth may regulate its employees, including attorneys, *as employees,* and second, that the court maintains its constitutional prerogative to regulate the practice of law.

The instant case might be distinguished from the cited cases in that it represents a private action against an attorney arising out of a statute and regulation rather than direct regulation of the courts or the practice of law. On the other hand, creation of this private cause of action may potentially impinge on the constitutional prerogative of the Pennsylvania Supreme Court. To avoid potential liability, a lawyer would not only be an officer of the court but would have to practice within a myriad of regulations promulgated by the Executive Branch of State Government. I have been unable to find any Pennsylvania cases directly on this point to help me predict how the Pennsylvania Supreme Court would decide this issue.

■ The rights of plaintiff in this case can be adequately vindicated under the federal statute. The rights of persons situated similarly to plaintiff can be vindicated under FDCPA in federal court (since there is no $10,000 or diversity jurisdictional requirement) or in state court. Although 28 U.S.C. § 157(b)(4) specifically exempts noncore matters from mandatory abstention, it would be far more appropriate for the question of regulation of Pennsylvania attorneys by Pennsylvania statute or regulation to be decided by the courts of Pennsylvania. The Supreme Court of Pennsylvania has a very exclusive and unique regulatory power in dealing with the members of its bar and I believe that they alone should decide the novel issues concerning the extent of that power and the meaning to be ascribed to the Pennsylvania Constitution

in that regard. As the District Court said at page 799 in *Mattingly v. Newport Offshore Ltd.,* 57 B.R. 797 (D.C.R.I.1986), when confronted with novel issues of state law:

"The Congress has made it plain that, in respect to noncore proceedings ... (i.e., cases which assert purely state law causes of action), the federal courts should not rush to usurp the traditional precincts of the state courts. 'Nothing in [§ 1334] prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding ... related to a case under title 11.' *Id.* at § 1334(c)(1). *See also id.* at § 1451(b) (granting this court authority to remand to the state court in such a situation 'on any equitable ground').

The legislative history of the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353, 98 Stat. 333 (1984), which gave birth to the bewildering array of statutes here at issue, adequately evinces an abiding concern for continuing to allow state courts to interpret state law. E.g., H.R. Conf.Report No. 98–882, 98th Cong.2d Sess. 3 *reprinted in* 1984 U.S. Code Cong. & Ad.News 591, 594 (statement of Sen. Hatch). Such concerns crest in a case like this, where the plaintiff's complaint raises tenebrous issues of Rhode Island law wholly unrelated to the temporal coincidence of the defendant/debtor's financial straits."

See also the general authority of *Kaiser Steel Corp. v. W.S. Ranch Co.,* 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968); *United Gas Pipeline Co. v. Ideal Cement Co.,* 369 U.S. 134, 82 S.Ct. 676, 7 L.Ed.2d 623 (1962); *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) at page 814, 96 S.Ct. at page 1244. Therefore, I abstain from deciding the part of plaintiff's claim relating to the Pennsylvania claim (DCTPR) and will dismiss it without prejudice. We recognize that this mat-

ter did not originate in a state court but nothing would prevent its being prosecuted there. I draw the parties' attention to 42 Pa. C.S.A. § 5103 regarding further prosecution of the DCTPR claim in Pennsylvania courts. Furthermore, consideration of the DCTPR claim is totally unnecessary to our decision in this case.

Since defendant falls within the definition of "debt collector" in FDCPA, but may not be subject to state regulation, I modify Proposed Conclusion of Law No. 2 as follows:

2. The defendant is a "debt collector" as defined in and subject to FDCPA. No opinion is given regarding applicability of DCTPR to lawyers.

The bankruptcy judge's Proposed Conclusion of Law No. 3 states:

"3. The Settlement Agreement in Adv. No. 87–0420S did not release the Defendant from liability in this proceeding, since it related to matters distinct from the letter of September 17, 1987 [*sic*], including dispatch of a separate letter not sent or composed by the Defendant."

■ Defendant objects to Proposed Conclusion of Law No. 3 on the grounds that, firstly, the Settlement Agreement dated July 16, 1987 in *Clara Littles v. Fleet Consumer Discount Company, supra,* ("Fleet Settlement"), in fact included the September 17, 1986 letter; secondly, that defendant Lieberman's liability was as agent for Fleet and therefore that liability was extinguished by the Fleet Settlement; and thirdly, if in the alternative defendant Lieberman's liability was not as agent for Fleet but instead was as a joint tort-feasor, under Pennsylvania law his liability was extinguished by the "General Release." I will deal with these contentions *seriatim.*

I agree that the Fleet Settlement included Fleet's liability for the September 17, 1986 letter. For reasons discussed below, I do not agree that it extinguished defendant Lieberman's liability for that letter. Paragraph 15 in the *Fleet* complaint says:

"15. On or about September 17, 1986, defendant Fleet through its agent, Arnold R. Lieberman, mailed to plaintiff a collection letter which is attached hereto as Exhibit P–2 and incorporated herein."

Exhibit P–2 to the *Fleet* complaint is the letter displayed in my Finding of Fact No. 1.

Defendant Lieberman contends that plaintiff claims that defendant Lieberman was acting as agent for Fleet when she received the letter. Therefore, runs his argument, the Fleet Settlement extinguished plaintiff's claim against him under principles of agency. Plaintiff did not allege an agency relationship in the sending of the letter. Paragraph 8 of the complaint in this matter says:

"On or about September 17, 1987 [*sic*], defendant Arnold Lieberman mailed to the plaintiff a collection letter which is attached hereto as Plaintiff's Exhibit "A" and incorporated herein."

The agency issue was raised in the *Fleet* complaint, not this complaint. More to the point, the agency relationship is disproved by the facts developed by defendant Lieberman in his defense of this action. These facts were accepted as true by the bankruptcy judge, and are incorporated in this opinion as Findings of Fact Nos. 6 through 9. Those facts reveal that instead of sending the letter at the request of Fleet, defendant Lieberman's part in the sending of the letter was limited to supplying the form. I will discuss below my reasons for finding that defendant Lieberman was a supplier of a deceptive form within the meaning of FDCPA, 15 U.S.C. § 1692j. For the purpose of determining the effect of the Fleet Settlement, it is sufficient to state that I so find. In enacting FDCPA, the Congress established the furnishing of a deceptive form, in violation of § 1692j, as a wrong, separate and distinct from false and misleading representations in violation of § 1692e. In furnishing the form, defendant Lieberman was not acting as agent in Fleet's § 1692e violation but for himself, in violation of § 1692j. Therefore, he cannot have his liability discharged by the Fleet Settlement on agency principles.

Defendant Lieberman also contends that if he was not acting as an agent for Fleet,

he was a joint tort-feasor with Fleet, and that the Fleet Settlement acted as a general release of all tort-feasors, including defendant Lieberman.

In DEFENDANT ARNOLD LIEBERMAN, ESQUIRE'S REPLY TO PLAINTIFF'S TRIAL BRIEF ("Reply Brief"), included by reference in DEFENDANT ARNOLD R. LIEBERMAN'S OBJECTIONS TO PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW, we find the following at page 11:

> "Pennsylvania law is also explicit on the effect of a General Release whereby the release of one joint tortfeasor automatically discharges the other. *Sochanski v. Sears Roebuck & Company*, 504 F.Supp. 182 (1980), *Frank v. Volkswagenwerk A.G. of West Germany*, 382 F.Supp. 1394 (1974, 12 P.S. 2085)."

I will begin by noting that 12 P.S. § 2085 was reenacted, effective June 27, 1978, as 42 Pa. C.S.A. § 8326, which says:

> "§ 8326. **Effect of release as to other tort-feasors**
>
> A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides, but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid."

With regard to the contention that "Pennsylvania law is also explicit on the effect of a General Release whereby the release of one tort-feasor automatically discharges the other", *Reply Brief,* page 11 [Emphasis supplied], I quote from *Sochanski, supra,* at 185:

> "Under the common law of Pennsylvania, the release of one joint tortfeasor automatically discharged the other. [Emphasis supplied]. *Hilbert v. Roth*, 395 Pa. 270, 149 A.2d 648 (1959). *See also George v. Brehm*, 246 F.Supp. 242 (W.D. Pa.1965). The Uniform Contribution Among Tortfeasors Act, 42 Pa. C.S.A. Sec. 8321–27 [UCATA] altered the law to

the contrary so that the release by the injured party of one jointly liable no longer releases others also liable unless the release expressly so provides."

The case goes on to deal with two key issues in deciding the effect of a release of one tort-feasor on the liability of other tort-feasors. The first issue is whether both tort-feasors are either both primarily or both secondarily liable:

> "[UCATA] applies only to joint or several tortfeasors, provided they are all primarily liable or all secondarily liable. Where the relationship between tortfeasors is one of primary and secondary liability, [UCATA] is inapplicable and hence common law principles are controlling. *George*, supra, at 246. See also *Brown v. Pittsburgh*, 409 Pa. 357, 186 A.2d 399 (1962); *Largent v. Means*, 121 P.L.J. 324 (Pa. C.P.1973).... Secondary as contrasted against primary liability 'rests upon a fault that is imputed or constructive only, being based on some legal obligation between the parties or arising from some positive rule of statutory or common law.' *Burbage [v. Boiler Engineering & Supply Co.*, 433 Pa. 319, 327, 249 A.2d 563, 567]."

*Sochanski, supra,* at 185.

In the instant case, each party violated a different statutorily created obligation to Mrs. Littles. Therefore, there is joint and several liability between them, not primary and secondary.

The final issue in *Sochanski* was the effect of the particular release. At page 186, the court says, in closing:

> "Accordingly, the Uniform Contribution Among Tortfeasors Act, *supra*, is applicable. Inasmuch as the release executed between the Plaintiff and Goodyear did not specifically provide for the release of Sears, Sears remains liable to the Plaintiff...."

*Sochanski*, in summary, does not stand for the *automatic* release of one joint tortfeasor by a release signed by the other, as contended by defendant. Instead, it stands for the proposition that under UCATA, a release of one joint tort-feasor releases the

other only where specifically so provided in the release.

The other case cited by defendant for the proposition of automatic release of one tort-feasor by a release executed by another is *Frank v. Volkswagenwerk A.G. of West Germany*, 382 F.Supp. 1394 (E.D.Pa. 1974), *modified on appeal*, 522 F.2d 321 (3d Cir.1975).[2] In that case, two minors were injured in an automobile accident. One minor brought suit against the driver of the other car, and upon determining that the driver had no reachable assets except his insurance policy, settled the case, with court approval, for the face amount of the policy. The other minor did not bring suit, but with court approval, reached a settlement with the driver. Thereafter, both minors sued Volkswagen alleging that defective design aggravated their injuries. The trial court found that the first minor's court approved settlement had the effect of a satisfaction of judgment citing *Albright v. R.J. Reynolds Tobacco Company*, 350 F.Supp. 341 (W.D.Pa.1972), *aff'd*, 485 F.2d 678 (3d Cir.1973). In that case, the district court relied upon a docket entry of settlement and discontinuance after a court-supervised conciliation procedure as foreclosing recovery against an unrelated tort-feasor. The Circuit Court in *Frank* refused to follow that decision. Instead, the court discussed among other cases, *Hilbert v. Roth*, 395 Pa. 270, 149 A.2d 648 (1959) and *Blanchard v. Wilt*, 410 Pa. 356, 188 A.2d 722 (1963). In *Hilbert*, the plaintiff received an adjudicated judgment, which was then satisfied. The *Hilbert* court held that a *satisfaction* of judgment against one tort-feasor took the question of the liability of the other tort-feasor out of the scope of UCATA, and therefore action against the other tort-feasor was barred. *Blanchard, supra*, limited *Hilbert* to its factual context, *i.e.*, to where there was a judgment based on an adversary action subsequently satisfied. In *Blanchard*, there was a directed verdict entered by consent of the parties. There was no judgment. In addition, the release language specified the one tort-feasor, and contained no general language. In *Frank*, the Circuit Court found that there had been no court adjudication of the value of the first minor's case, it having been settled for the entire reachable asset of the defendant driver. There was also no general language in the release, therefore the subsequent action against the automobile manufacturer was not barred.

The Circuit Court affirmed the holding of the district in regard to the second minor, because her release did contain the words "all other persons, firms or corporations liable or who might be claimed to be liable...." This was held by a reluctant court to be sufficient to comply with the requirements of § 8326 for a general release.

In summary, *Frank* does not stand for automatic release of one tort-feasor by a release executed by another, as contended by defendant. Instead, the Circuit Court in *1975* reversed the portion of this case on which defendant relied. With regard to the issues in this case, *Frank* stands for the proposition that a court approved settlement by one tort-feasor does not release another unless the release specifically so provides.

Having determined that the effect of a release based on a settlement depends on the language of the release, I will now examine the language of the Fleet Settlement, first as represented by defendant Lieberman in his Reply Brief, and then as found in the Settlement Agreement itself. The Reply Brief states at page 10:

"On or about July 16, 1987, Clara Littles agreed to a settlement in case no. 87–00098, *Clara Littles vs. Fleet Consumer Discount Company*. Paragraph 8 of the said Agreement releases Fleet 'from any and all claims arising directly or indirectly from any loan or relating to any allegations set forth in the Complaint including the mailing of a letter (P–2), over Mr. Leiberman's name, as agent of Fleet'. Paragraph 9 releases Fleet 'from direct or indirect claims as a result of the subject loan transaction'.

---

**2.** In his brief, defendant did not include the citation to the opinion of the Third Circuit discussed below, which reverses the holding of the District Court on which defendant relies.

Clara Littles testified that she signed the Agreement and her counsel stipulated at the hearing that it was the Release Agreement in case No. 87–00098.

The General Release executed by plaintiff, dismisses any and all claims against Fleet, its agents, servants, and employees that may have arisen from the loan transaction and the letter purportedly signed by Mr. Leiberman."

In fact, the relevant paragraphs of the Fleet Settlement, paragraphs 8 and 9, read:

"8. Mrs. Littles releases Fleet Consumer from any and all claims that she has, had or may have, arising, directly or indirectly, from any loan or refinancing transaction(s) with Fleet Consumer, or relating to any of the allegations set forth in her aforesaid Complaint. Accordingly, Mrs. Littles' aforesaid Complaint is withdrawn, with prejudice."

"9. C.L.S. releases Fleet Consumer from any and all claims that it has, had or may have, arising, directly or indirectly, from its participation or involvement relating to the subject-matter(s) of Mrs. Littles' aforesaid Complaint, including, but not limited to, costs and counsel fees."

In paragraph 6 of the Fleet Settlement, the term "Fleet" is defined as Fleet Consumer Discount Company.

Under Pennsylvania law, a release by one tort-feasor does not release another tort-feasor unless the language of the release so specifies, and the Fleet Settlement specifies Fleet alone. In addition, the remedial purpose of FDCPA would be frustrated if release of a tort-feasor under one section of the act would, automatically and without specification by plaintiff, release a tort-feasor under another section. For these reasons, my Conclusion of Law No. 3 is:

3. The Settlement Agreement dated July 17, 1986, in *Clara Littles v. Fleet Consumer Discount Company*, Adv. No. 87–0420S, did not release defendant Lieberman from liability in this proceeding.

The bankruptcy judge's Proposed Conclusion of Law No. 4 states:

"4. However, given our crediting the testimony of Mr. Price and the Defendant that the latter did not sign or send out the letter and was not aware of its dispatch other than to specific designated consumers, which did not include Littles, the Defendant is not liable to Littles as either a 'debt collector' or a 'form supplier' as to the letter of September 17, 1986."

Plaintiff objected to Proposed Conclusion of Law No. 4 on the ground that defendant Lieberman is liable under 15 U.S.C. § 1692j for furnishing a deceptive form. The threshold issue is the failure of the complaint in this matter to specify liability under § 1692j.

The relevant paragraph of the complaint, paragraph 8, says:

"On or about September 17, 1987 [*sic*], defendant Arnold Lieberman mailed to the plaintiff a collection letter which is attached hereto as Plaintiff's Exhibit "A" and incorporated herein."

The evidence at the hearing showed that defendant Lieberman did not send the letter, but that earlier he had furnished the form of the letter for use with eight or ten specified debtors. Some of this evidence came in over defendant's objections. Amendment of the pleadings to conform to the evidence is governed by Fed.R.Civ.P. 15(b), which says:

"**(b) Amendments to Conform to the Evidence.** When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation

of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

Where the non-conforming evidence is received over objection, the amended issue cannot be considered to have been tried with consent of the parties. The pleadings must be amended if the non-conforming evidence is to be considered, but may only be amended by leave of the court. In this case, the non-conforming evidence came into the record in an unusual way. A hearing was held before Bankruptcy Judge David Scholl on September 8, 1987. Beginning at page 63 in the transcript, plaintiff's counsel, Margaret E. Taylor, Esquire, is engaged in direct examination of defendant, who had been called as plaintiff's witness. She is asking him about Exhibit P–2, which is the September 17, 1986 letter. At page 64, defendant denies the signature on the letter. There is then discussion that reveals that the typed portion of the letter had been composed by defendant. On page 67, defendant says he knew nothing about the letter to Clara Littles until he received the copy attached to the complaint. Then the following discussion takes place (Mr. Cheyney is defendant's counsel; Ms. Taylor is plaintiff's counsel):

"Mr. Lieberman—Direct, Page 67

Q. (by Ms. Taylor) I think I'll ask, Mr. Lieberman, at the time when you composed this letter and worked on it—and did you give this letter to Fleet Consumer Discount Company?

A. This letter again was made up ten or twelve years ago with your office and with Judge Scholl. That's when it was made up. We're talking about the printed material now, okay?

Q. I am talking about the printed material. Did you give it to Fleet Consumer Discount Company for their use?

A. I don't understand what you mean by give to them for their use.

Q. Did you authorize them to use it?

A. I did not.

Q. Never.

A. Never. Well, let's go back, say never. I believe in May or June of 1986, there was a problem with my sending these letters out from my office. At that time, by a problem, I mean some of the letters were going out a week or so after requests because of typing problems or secretarial problems, whatever. Mr. Price called me and said—reminded me of that problem. He had a problem I believe with delinquency on some matters, and I did take to his office at that point I think about eight letters for him to send. And I ran those over to him at 511 North Broad, and I believe he showed me those files, and those letters were to go for those files only.

Q. So you did in fact give Fleet permission to use the letters in these specific cases.

A. No, I did not.

MR. CHEYNEY: Objection.

MS. TAYLOR: I must have misunderstood what you said, Mr. Lieberman.

THE COURT: Overruled. I thought that is what you said too.

MR. LIEBERMAN: In those specific eight matters.

THE COURT: That was her question.

MR. LIEBERMAN; Oh, I'm sorry.

MR. CHEYNEY: I also object, Your Honor, again, referring to the complaint. There is no allegation that we supplied a form. The complaint is most specific. The allegations of liability arose out of our sending this letter, and I refer Your Honor to the complaint, and I contend that this line of questioning and this argument, not that I'm conceding it, is totally irrelevant. The complaint is very specific on what we did wrong.

THE COURT: All right. Overruled. Go ahead."

For a number of pages, defendant then gives testimony on direct, cross (by his counsel), re-direct and re-cross, much of which deals with the furnishing of the form of the letter to Fleet. It is clear that such testimony after the objection by defendant's counsel at the bottom of page 68 and

the top of page 69 came in over defendant's objection.

On Page 88, after plaintiff rests, defendant calls as his own witness, Ronald J. Price, Branch Manager for Fleet. On direct examination by Mr. Cheyney and cross by Attorney Taylor, Mr. Price goes into detail on how the form for the letter came into Fleet's possession, how it was intended to be used, and how it might have come to be sent to plaintiff Littles. This testimony alone adequately supports a finding that defendant Lieberman was a furnisher of a deceptive form with regard to the September 17, 1986 letter.

█ My conclusions are: first, that Mr. Cheyney properly objected to the evidence given by defendant Lieberman regarding furnishing the form within the meaning of Fed.R.Civ.P. 15(b); second, that the defendant could not have been surprised or prejudiced by such testimony, since he gave it himself; third, that defendant did not object to the testimony of defendant's witness, Ronald Price; and fourth, that Ronald Price's testimony can properly be used to support a finding that defendant furnished the form for the September 17, 1986 letter.

I stress the fact that knowledge of how the letter came to be sent to Littles was wholly in defendant and Fleet. To defend himself from the claim under 15 U.S.C. § 1692e, defendant Lieberman chose to rebut the presumption that the letter, on his letterhead and signed with his name, had been sent by him. Defendant raised the issue of Fleet using a form supplied by him. After denying his signature, defendant had to support an alternate hypothesis. If anyone was surprised, it was plaintiff, not defendant. It was defendant who chose to have Fleet, immunized through the Fleet Settlement, confess fault. In addition, while § 1692j was not specified, plaintiff's claim fell under § 1692 *et seq.* The whole of § 1692 and its subsections is not so great that defendant could not easily have reviewed it when preparing his defense. Consequently, in addition to the lack of factual surprise, the concise and lucid nature of § 1692 *et seq.* supports my

conclusion that no material prejudice results to defendant from rendering judgment on the § 1692j issue.

I find that the issue of defendant's furnishing the form was, to a sufficient degree, tried by consent of the parties, and that defendant's objection to giving evidence on this issue was waived by his voluntarily presenting the evidence of Ronald Price. Therefore, that issue shall be treated as though it had been raised in the pleadings. Failure to amend the pleadings will not affect the result of the trial of that issue. Fed.R.Civ.P. 15(b).

I will now proceed with the merits of the issue of defendant Lieberman's liability under § 1692j.

Section 1692j reads as follows:

**"§ 1692j. Furnishing certain deceptive forms**

(a) It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

(b) Any person who violates this section shall be liable to the same extent and in the same manner as a debt collector is liable under section 1692k of this title for failure to comply with a provision of this subchapter."

█ The legislative history of this section is found at 1977 U.S.Code Cong. and Admin.News p. 1699, as follows:

*"Furnishing deceptive forms*

Another common collection abuse is known colloquially as 'flat-rating.' A 'flat-rater' is one who sells to creditors a set of dunning letters bearing the letterhead of the flat-rater's collection agency and exhorting the debtor to pay the creditor at once. The creditor sends these letters to his debtors, giving the impression that a third party debt collector is collecting the debt. In fact, however, the flat-rater is not in the business of debt

collection, but merely sells dunning letters.

This bill prohibits the practice of flat-rating because of its inherently deceptive nature. The prohibition on furnishing such forms does not apply, however, to printers and custom stationery sellers who innocently print or sell such forms without knowledge of their intended use."

The practice engaged in by defendant Lieberman, as described in the testimony of Fleet manager Ronald Price, fits the description of "flat-rater". The fact that defendant Lieberman is a lawyer, rather than a collection agency, is no defense for two reasons: first, that the statute itself does not specify "collection agency"; and second, that a misrepresentation by Mr. Lieberman as an officer of the court is a greater wrong than a misrepresentation by a collection agency. Form furnishing or "flat-rating" is a practice distinct from other prohibited practices. Put simply, FDCPA makes it an offense to make false or misleading representations (§ 1692e) or to permit others to use your name in a deceptive way (§ 1692j). The key phrase in § 1692j is "knowing that such form would be used to create a false belief." The letter, particularly as used in this case, is clearly designed to create a false belief, *i.e.*, that Attorney Lieberman intends to take legal action to collect the debt. If he does not, the letter is deceptive, and violates both the letter of the act and the expressed intent of the Congress.

With regard to the question of whether the typed portion of the letter constitutes a form, the *Random House College Dictionary*, 1975, gives the following definitions of the word "form":

"a set order of words, as for use in a religious ritual or in a legal document; a typical document to be used as a guide in framing others for like cases; a set, prescribed or customary order of method of doing something."

Running through these definitions are two threads, uniformity of language and adaptability to necessary variations in achieving a common purpose. The form of this letter, according to the evidence given by defendant, has been uniform for some years, only the names of debtors and creditors, amounts and dates being changed. It has been used, between numerous parties, for the common purpose of inducing the payment of debts. Evidence was given indicating an intent to avoid controversy in the design of the form. Whatever good intentions there may have been in the past, the form does not meet the standards of FDCPA. It is a "form", and it violates the law.

Regarding *scienter*, we have testimony by Fleet's manager, Ronald Price, showing that defendant Lieberman gave Fleet copies of the form to be addressed to specified debtors. Defendant Lieberman's name was to be signed by a Fleet employee. No authorization by defendant Lieberman or manager Price was given for sending the letter to Clara Littles. How could defendant Lieberman be blamed for its being sent to her? Simply by giving Fleet the blank form, which included his name and letterhead, he lost control of the use of his own good name. Defendant Lieberman, as an officer of the court, owes the public a duty to control the use of his professional name. His failure to do so imputes the knowledge required by § 1692j.

In conclusion, I find that the letter is a form within the meaning of § 1692j, that it was furnished by Mr. Lieberman with imputed knowledge of its intended use, and that its intended use was deceptive, in violation of § 1692j. Therefore, my Conclusion of Law No. 4 is:

4. Defendant Lieberman is, with regard to Clara Littles, a furnisher of a deceptive form, within the meaning of 15 U.S. C. § 1692j, but did not engage in a deceptive practice within the meaning of 15 U.S.C. § 1692e.

■ Having determined that defendant Lieberman is liable to plaintiff Littles under § 1692j, I must determine damages. The procedural posture of this case is unfortunate in that two actions were brought to vindicate plaintiff Littles' rights growing out of one bundle of wrongs. The evidence of her actual harm is not strong. Defend-

ant Lieberman was not given an opportunity to participate in the Fleet Settlement, which would have been the best way to determine his share in the overall harm. Consequently, I find actual damages in the nominal amount of ONE ($1.00) DOLLAR. The matter does not end there. The Congressional findings and declaration of purpose found in 15 U.S.C. § 1692 compel me to assess additional damages, where necessary, to effectuate the purpose of the act. § 1692 says:

"**§ 1692. Congressional findings and declaration of purpose**

(a) There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

(b) Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

(c) Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

(d) Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

(e) It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."

The legislative history of FDCPA, at *1977 U.S.Code Cong. and Admin.News,* says, at page 1699:

"The Committee views this legislation as primarily self-enforcing; consumers who have been subjected to collection abuses will be enforcing compliance."

In effectuating the Congressional purpose by assessing additional damages, I must, pursuant to § 1692k(b)(1), give due consideration the frequency and persistence of noncompliance, the nature of the noncompliance, and the extent to which noncompliance was intentional.

Defendant Lieberman's liability under § 1692j does not depend on his being a "debt collector" within the meaning of § 1692a(6). Therefore, the exception of lawyers found in repealed § 1692a(6)(F) does not apply, and I can consider, for purposes of assessing additional damages, the entire pattern of defendant Lieberman's behavior as revealed by the evidence in this case. What I find in Ronald Price's testimony is a pattern that mixes carelessness and intentional misconduct. The failure to control the use of his professional name is, as noted above, sufficient to give the *scienter* required by § 1692j, but is not sufficient, nor is the nature or extent of noncompliance sufficient, to justify the maximum additional damages provided in § 1692k. It is sufficient, considering the duty toward his professional name as an officer of the Court, to justify additional damages of ONE HUNDRED ($100.00) DOLLARS and payment of reasonable attorney's fees to plaintiff Littles' counsel. Therefore, my Conclusion of Law No. 5 is:

5. Defendant Lieberman is liable to plaintiff Littles for ONE ($1.00) DOLLAR actual damages pursuant to 15 U.S.C. § 1692k(a)(1); additional damages of ONE HUNDRED ($100.00) DOLLARS pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorney's fees to plaintiff Littles' counsel pursuant to 15 U.S.C. § 1692(a)(3).

In consideration of the foregoing, I have modified the recommendations of the bankruptcy judge as noted in this opinion.

## CONCLUSIONS OF LAW

1. The instant proceeding is a non-core, related matter. Therefore, the bankruptcy judge properly heard the matter, but was required to submit proposed findings of

718

fact and conclusions of law to the district court rather than determining it himself. *See* 28 U.S.C. § 157(c)(1).

2. The defendant is a "debt collector" as defined in and subject to FDCPA. No opinion is given regarding applicability of DCTPR to lawyers.

3. The Settlement Agreement dated July 17, 1986 in *Clara Littles v. Fleet Consumer Discount Company,* Adv. No. 87–0420S, did not release defendant Lieberman from liability in this proceeding.

4. Defendant Lieberman is, with regard to Clara Littles, a furnisher of a deceptive form, within the meaning of 15 U.S.C. § 1692j, but did not engage in a deceptive practice within the meaning of 15 U.S.C. § 1692e.

5. Defendant Lieberman is liable to plaintiff Littles for ONE ($1.00) DOLLAR actual damages pursuant to 15 U.S.C. § 1692k(a)(1); additional damages of ONE HUNDRED ($100.00) DOLLARS pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorney's fees to plaintiff Littles' counsel pursuant to 15 U.S.C. § 1692k(a)(3).

To the extent not modified by this opinion, I adopt the carefully reasoned recommendations of the bankruptcy judge.